Submitted on briefs May 29, modified October 11, rehearing denied November 15, 1927.

## JESSIE M. JENSEN v. MAGGIE ANDERSON
### ET AL.

(259 Pac. 913.)

**Trusts—Transaction Whereby Daughter Permitted Father to Use Mortgage as Part Payment for Land Held Family Loan, not Entitling Daughter to Interest in Land.**

1.  Where a daughter permitted her father to use a mortgage which she owned as part payment for a contract for the purchase of land which was assigned to her stepmother by the former owners, transaction *held* a family loan, not entitling the daughter to an interest in the land.

**Specific Performance—In Action to Compel Conveyance of Land Under Contract, Defendant, Claiming Interest, had Burden of Proof.**

2.  In action to compel conveyance of land under a contract of sale, where one claiming an interest in the land was permitted to become a party, *held*, that she had the burden of affirmatively proving her interest.

**Trusts—Where Purchaser had Invested Defendant's Money in Purchase of Land With Her Authority, Defendant Held Entitled to Proportional Interest.**

3.  Where purchaser had used defendant's money with her knowledge and consent in purchase of land, which contract of purchase was assigned to his wife, defendant *held* entitled to her proportional in-

---

1.  Presumption as to trust or advancement where property purchased with money of parent and title taken in name of child, see note in 26 A. L. R. 1126.  See, also, 26 R. C. L. 1225.

terest in the land in an action by the wife against the owner of the land to compel a conveyance on paying the balance of the purchase price.

Trusts, 39 Cyc., p. 131, n. 92, p. 132, n. 93, p. 152, n. 9, p. 161, n. 65, p. 163, n. 71.

From Multnomah: WALTER H. EVANS, Judge.

In Banc.

This suit involves two acres of land situated on the Sandy Road, Multnomah County, Oregon. Prior to June 15, 1923, one Cooper and wife held a contract of purchase covering the same, which on that date they transferred by written assignment to the plaintiff Jessie M. Jensen. At this time the Coopers were paid $1,075 cash and a $900 mortgage on other property which they took at a valuation of $750; a balance of $675 remained to be paid to the holder of the legal title, which balance of $675 had been reduced at the time of the trial to $550, principal. Plaintiff, who instituted this suit, claimed to be entitled to a conveyance of the premises to her upon the payment of the balance of said purchase price and accruing interest which she offered to pay.

Defendants Fredericka M. Eichhorst and Marie K. Jensen were permitted to interplead in the suit and claimed that the money and the mortgage paid for the real property in controversy belonged to them. The defendant Maggie Anderson, who now holds the title to the property, alleges that she is ready, willing and able to make a deed of conveyance thereof, upon the full payment to her of the amount due upon the contract, and additional expenses incurred, when the question as to whom the deed is to be made is settled by the court.

Defendant Thomas A. Jensen was a widower and plaintiff a widow, both having children by their

former marriage. Defendant Marie Jensen is the daughter of Thomas A. Jensen, and Fredericka M. Eichhorst is the mother of his first wife. Dr. Jensen is a chiropractor in Portland. Some years ago he made a trade with a party for California property and that party brought suit and recovered back the property upon the ground of fraud in the transaction. Jensen was deeply in debt. And it is claimed that he covered up what property he had; that some of it he carried in the name of his mother-in-law and some of it in his daughter's name. During his courtship, of several years, with plaintiff he told her of his affairs, of his debts and his property. He showed his property to her and said to her "this is my property." He bought a seven-acre tract and took title in the name of his daughter, but he pointed out to plaintiff and said "it is mine, but it is in my daughter's name, but I don't want her to know it."

His business as a chiropractor did not seem to suit him and he told his prospective wife that upon their marriage she should give up her employment with Meier and Frank; he would quit as a chiropractor and they would purchase a farm and engage in raising silver fox. The seven-acre tract was purchased for that purpose, but was located on a by-road and was unsuitable. They were advised to locate their silver fox farm on a main public highway.

When they returned from their honeymoon they went out upon the Columbia Highway, adjacent to Portland, and saw the land involved in this suit with a sign "For Sale." They inquired about it and finally struck a bargain at $2,500, paying $200 cash down as earnest-money, with a further payment making the amount stated. The court rendered a decree in favor of the defendants Marie K. Jensen and Fred-

ericka M. Eichhorst, to the effect that the land was held in trust for them in proportion to their payments of the purchase price. Plaintiff appeals.

MODIFIED. REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Kaste & Rand.*

For respondent Maggie Anderson there was a brief over the name of *Mr. Oliver M. Hickey.*

For respondent Thomas A. Jensen there was a brief over the name of *Mr. C. D. Christensen.*

For respondents Marie K. Jensen and Fredericka M. Eichhorst there was a brief over the name of *Messrs. Veazie & Veazie.*

BEAN, J.—As stated in respondents' brief, practically the only issue of fact in the case is as to whose money or property was used to make the payment of $1,825 for the land and such additional payments as were made later. Defendants Fredericka M. Eichhorst and Marie K. Jensen say it was theirs. It is upon this statement that they relied. The contract of sale was assigned to the plaintiff. As far as the Jensens or Mrs. Eichhorst have any paper title, it rests in her. The suit, in so far as appears of record, is not between plaintiff Jessie M. Jensen and her husband, from whom she separated about four months after their marriage. If the money, mortgage or property belonged to Dr. Jensen, he had a right to give it to his wife. Dr. Jensen, however, appears to be the moving spirit in the suit and his testimony, although criticised severely by the trial court, is

mainly relied upon by the defendant in the suit. The testimony is involved and conflicting.

1, 2. First, considering the claim made by Marie K. Jensen, the daughter, Dr. Jensen had a motor-car which he drove. It was registered and licensed in his daughter's name. It was sold on contract for $650, which was not paid, and after a time a note and mortgage on certain property was taken in settlement for the car, expenses and attorney's fees, making the amount of the mortgage $900. This mortgage was executed by one Minnie E. Farley to M. E. McDermitt, who hold it in trust. This mortgage was traded in part payment for the land in dispute. The attorney's fees of $100 included in the mortgage were paid by or through Dr. Jensen, making about $200 claimed to be paid for the land by Dr. Jensen.

Marie K. Jensen, the daughter, had been working for about five years at $60 per month, and later for $90 per month. She states that at first she saved $15 per month and afterward $50 per month; that $500, which came to her from her mother's estate, was paid on the car, and the rest came from her work. In regard to the purchase of the fox farm, Miss Jensen testified as to what took place between her and her father in part as follows:

"A. He needed some money and I had that mortgage and it wasn't any good the way it was, so I let him take it and use it in the farm.

"Q. What was the understanding, if any, as to whose that farm should be when it was bought? A. Well, my grandmother and I were to have the money in on it and after he was able to pay for it, why, then it was his, but while our money was in it it was ours."

That she did not know anything about how the title was taken until her father and his wife sep-

arated. On cross-examination Miss Jensen states that it was the understanding that her father was to be manager of the fox farm. And further—

"Q. He was to have ten per cent, you and your grandmother were to buy the foxes, you were to put your money in the property and your father when he got onto his feet and got around and made the money, was to pay you back and then the property was to be his? A. Yes."

The transaction between the father and daughter looks to us, from her standpoint, like a family loan. The farm was to be Dr. Jensen's eventually. It does not appear from the testimony, to our satisfaction, that defendant Thomas A. Jensen was acting as agent for his daughter. The matter of the title being held in trust for her appears to have been an afterthought. In short, the allegations of the answer of Marie K. Jensen are not sustained by the evidence. The burden is upon her to sustain the affirmative averments of her answer. The relief prayed for in her answer is denied.

Defendant Mrs. Eichhorst has, as it appears, a dower interest in her deceased husband's land in South Dakota and obtains an income therefrom of $200 to $500 per annum. Through Dr. Jensen, who has transacted her business for several years and before the doctor's second marriage, she purchased property in North Irvington for $2,500 and afterward she sold and conveyed it for $3,500, receiving $600 cash, and the balance in installment payments. About August 30, 1923, the balance for the North Irvington property was paid and came into the hands of Dr. Jensen. It was deposited in the bank in his wife's name. When they separated she drew $800 from the bank. Afterward Mrs. Eichhorst brought suit

against plaintiff and her husband and recovered a portion of this money.

3. At the time of the purchase of the fox farm, Dr. Jensen had in his hands about $1,215 of Mrs. Eichhorst's money. He wrote to her seeking to get her to invest $1,500 in the enterprise. She answered, in effect, that she did not have that much loose money, but that he could proceed to invest what he had belonging to her. The plaintiff was informed of this correspondence. Jensen invested $1,075 of Mrs. Eichhorst's money in the fox farm and to that extent the plaintiff should be held to be the trustee and holder of the contract of purchase for defendant F. M. Eichhorst. The remainder of the real estate is held by plaintiff in her own right.

Plaintiff Jessie M. Jensen and defendant F. M. Eichhorst upon the payment of their respective proportional part of the balance of the purchase price of the fox farm with accrued interest and legal expenses, if any, are entitled to receive a deed of conveyance of the real estate in question to them in proportion to their respective interests.

The decree of the lower court will be modified according to this opinion. No costs will be awarded either party on this appeal.

MODIFIED.    REHEARING DENIED.

Mr. Chief Justice RAND took no part in the consideration of this case.